## CIRCUIT COURT OF FAIRFAX COUNTY

In re Application of
Rosemary Kooiman
to Celebrate the
Rites of Matrimony

May 29, 1998

BY JUDGE F. BRUCE BACH

This matter is before the Court on Rosemary Kooiman's application to celebrate the Rites of Matrimony pursuant to Virginia Code § 20-23. For the reasons stated below, I deny Ms. Kooiman's application.

### *Statements of Facts*

In April 1998, Kooiman, a Maryland resident, filed an application for authorization to perform marriage ceremonies in the Commonwealth of Virginia. Kooiman applied for certification under Virginia Code § 20-23, as the High-Priestess and Founding Elder of the Nomadic Chantry of the Gramarye. In an attempt to comply with the statutory mandates, Kooiman filed a Certificate of Ordination and an affidavit from Abraham Kooiman, Trustee of the Nomadic Chantry of the Gramarye, certifying that Kooiman is in good standing with the organization. Unsatisfied with the papers submitted, the Court granted a hearing giving Kooiman the right to present additional evidence in support of her application. Of particular concern to the Court was the lack of proof that Kooiman is the "minister" of a religious organization, which the Virginia Code requires.

On May 8, 1998, the Court held a hearing that revealed the following facts. Kooiman is the Founding Elder of the Nomadic Chantry of the Gramarye. Both Kooiman and her daughter Kathleen are self-ordained high priestesses of this group. The congregation, consisting of up to fifty members, meets in the basement of Kooiman's home for full moon celebrations.

Kooiman presented documents showing the organization obtained tax exempt status from the United States government and the State of Maryland in 1995. However, Kooiman was unable to present any "religious" literature that memorializes her group's beliefs or doctrines. Similarly, no "handbooks" or "guidelines" for the high priestess were introduced at the hearing. In fact, Kooiman did not provide any evidence to show the Nomadic Chantry of the Gramarye is connected in any way with the Church of Wicca or any broader organization.

## Analysis

The Commonwealth of Virginia has historically considered marriage among its most valued and sacred institutions. As such, the Virginia legislature has systematically surrounded the celebration of marriage (as well as its dissolution) with statutory mandates. *See* Va. Code Ann. § 20-1 *et seq.* For instance, every marriage in this Commonwealth must be under a license and solemnized by an approved celebrant. Va. Code Ann. § 20-13 requires "[e]very marriage in this Commonwealth ... be under a license and solemnized in the manner ... provided." *Id.* The Virginia Supreme Court has emphasized that "[t]he interest of the state is not only in marriage as an institution, but in the contract between the parties who marry, and in the proper memorializing of the entry into, and execution of, such a contract. In the proper exercise of its legislative power, it [the legislature] can require that the person who performs a marriage ceremony be certified or licensed." *Cramer v. Commonwealth*, 214 Va. 561, 565 (1974). Therefore, marriage licenses are not considered valid unless someone authorized to perform the ceremony signs them.

The Virginia statutory scheme surrounding the certificate of marriage celebrants sets out several alternative avenues under which an individual may petition this Court for licensing. Virginia Code § 20-25,[1] authorizes this Court to issue civil marriage celebrant licenses to Fairfax County residents. Applications are filed with the Clerk's Office and are accompanied with the applicant's resume and two letters of recommendation. This provision is

---

[1] Section 20-25 provides in part: "The circuit courts of the Commonwealth, the clerks of which are authorized to issue marriage licenses, shall appoint one or more persons, resident in the county or city for which such court is held, to celebrate the rites of marriage, and upon any person, so appointed, giving bond in the penalty of $500.00 with surety, shall make a like order as provided in § 20-23 authorizing him to celebrate the rites of marriage in the Commonwealth ... ." *Id.*

limited to marriages performed within the boundaries of Fairfax County. The Court may also authorize a Fairfax County resident to perform a single wedding on a specific day. Under Virginia Code § 20-26,[2] the Court can certify a member of a religious society, which has no ordained minister, to celebrate the rites of marriage. Finally, a member of the ministry can apply to perform an unlimited number of marriages throughout the Commonwealth of Virginia. Va. Code Ann. § 20-23. Kooiman applied for a license under this latter section.

Section 20-23 sets forth a two-prong test Kooiman must satisfy before the Court may enter an order authorizing her to celebrate the rites of matrimony in Virginia. In particular, Kooiman must produce "proof of [her] ordination and of [her] being in regular communion with the religious society of which [she] is a reputed member." *Id.*

It should be clear from the outset that this is not a case concerning religious freedoms. Instead, the only question is whether Ms. Kooiman is a "minister" of a religious denomination and in "communion" with the members of the religious society.

At the hearing. Ms. Kooiman verbalized her belief that the basis of the petition's denial was because the Court did not accept or appreciate her "religion." The Petitioner's assumptions are misguided. "Religion" is defined as "a set of beliefs concerning the cause, nature, and purpose of the universe, especially when considered as the creation of a superhuman agency or agencies, usually involving devotional and ritual observances and often having a moral code for the conduct of human affairs." *The Random House College Dictionary*, p. 1114 (1988). The evidence offered to the Court is that Kooiman's group respected the earth and congregated for full moon celebrations. I am assuming, without deciding, that the Nomadic Chantry of the Gramarye meets the definition of a religion as I am reluctant to wade into the sensitive and difficult question of whether an organization is a "religion" under the law. *Dettmer v. Landon*, 617 F. Supp. 592 (E.D. Va. 1985) (recognizing that "because religion is so highly personal and private, dealing with spiritual rather than temporal matters, courts have traditionally been reluctant to examine and pass judgment" on one's beliefs. *Id.* at 594, *aff'd in part and rev'd in part*, 779 F.2d 929 (4th Cir. 1986). Indeed, "[f]ew tasks that

---

2   Section 20-26 provides in part: "Marriages between persons belonging to any religious society which has no ordained minister may be solemnized by the persons and in the manner prescribed by and practiced in any such society. One person chosen by the society shall be responsible for completing the certification of marriage in the same manner as a minister or other person authorized to perform marriages ... ." *Id.*

confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion ... . Judges are ill-equipped to examine the breadth and content of an avowed religion; [and] we must avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3rd Cir. 1981); see also *United States v. Seeger*, 380 U.S. 163 (1965). Perhaps this apprehension explains the statute's explicit omission of any requirement that the Court determine the legality of an applicant's religion. Accordingly, the Court's review of applications submitted under Va. Code § 20-23 does not involve any inquiry into the validity of the applicant's religion. Therefore, in reviewing Kooiman's application for statutory compliance, the determinative question is whether Kooiman is a minister of a religious denomination as contemplated by the Code.

In *Cramer v. Commonwealth*, the Virginia Supreme Court squarely addressed the complexities in defining a "minister" under the mandates of Virginia Code § 20-23. The *Cramer* court considered whether members of a church consisting of all ministers qualified for a license to marry under § 20-23. While acknowledging the statute provides a "blanket qualification of all ministers selected or elected by religious organizations," the Court explicitly rejected the notion that the legislature intended to qualify a member of a religious organization whose ministerial appointment was obtained in a "casual" or "cavalier" manner. *Cramer v. Commonwealth*, 214 Va. at 566. Declaring that "the minister referred to [in Va. Code § 20-23] is the head of a religious congregation, society or order ... [s]et apart as the leader ... the person elected or selected in accordance with the ritual, bylaws or discipline of the order ..." the Court emphasized that the General Assembly intended to qualify only those citizens within the selective and exclusive class of "ministers." *Id.* at 567.

While the Supreme Court has not specifically analyzed the requirements of § 20-23 in relation to the high priestess of the Nomadic Chantry of the Gramarye, there is support in both *Cramer* and logic for the proposition that a self-proclaimed high priestess of a small coven of witches meeting monthly in her basement is simply not what the Virginia General Assembly had in mind when they said the Court may give a marriage celebrant license to a minister of a religious denomination.

In papers filed with the Court, Kooiman stated that the group she founded is "an eclectic Wiccan Circle." Uncertain as to the meaning of this reference, I will assume Kooiman is suggesting a connection with the "Wiccan Craeft" or

"Church of Wicca." In 1985, the Fourth Circuit recognized the Church of Wicca as a religion whose members "adhere to a complex set of complex doctrines relating to the spiritual aspect of their lives." *Dettmer v. Landon*, 617 F. Supp. 592, 597 (E.D. Va. 1985). Undoubtedly, a minister of the Church of Wicca, as defined by the Fourth Circuit in *Dettmer v. Landon*, qualifies for a marriage celebrant's license under § 20-23 of the Virginia Code. Licensing, of course, is contingent on the applicant's meeting all the statutory requirements contemplated by the legislature, namely, sufficient proof of ordination and proof of communion with congregation. Kooiman, however, fails to produce sufficient evidence to prove the group's relationship with the Church of Wicca. There is no indication that the Nomadic Chantry of the Gramarye has received any "official" instruction or authorization from the Church of Wicca. Kooiman has not established any relationship between the Church of Wicca and the Nomadic Chantry of the Gramarye apart from her statement that she is a practicing witch. While Kooiman may practice and maintain "Wiccan beliefs," she has neglected to show any connection between the Nomadic Chantry and the Church of Wicca. To authorize a marriage celebrant in this situation would mean that every self-proclaimed leader of a small cult could perform marriages in Virginia. This is not what the General Assembly intended.

Secondly, Kooiman has offered no significant evidence to support the proposition that she was "elected" or "selected" by the congregation to be their leader. She in fact testified that she founded the organization and was a self-ordained "high priestess." However, Kooiman could not provide any characteristics that set her apart from the general members of the Nomadic Chantry of the Gramarye. Instead, she stated there was "no difference." Further, Kooiman offered no differentiation between the duties and responsibilities of a high priestess and the duties and responsibilities of the congregation. Moreover, there is no evidence that the Nomadic Chantry of the Gramarye has any written bylaws or directives concerning the group's philosophy and management. The simplicity with which Kooiman obtained her ministerial status and the commonality between the high priestess and the members does not support Kooiman's contention she is a "minister" for the purposes of Virginia Code § 20-23.

For the reasons stated, I deny the application of Rosemary Kooiman.